IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Crim. No. 04-103-SLR |
| ) | |
| JACKIE JOHNSON, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM ORDER**

I.  INTRODUCTION

Defendant Jackie Johnson moves to suppress evidence that was seized from his vehicle on December 31, 2003.[1]  (D.I. 9)  An evidentiary hearing was held on August 4, 2005.[2]  (D.I. 24) Post-hearing briefing is complete.  (D.I. 32, 33)  The court has jurisdiction pursuant to 18 U.S.C. § 3231.  For the reasons that follow, defendant's motion to suppress will be denied.

II. FINDINGS OF FACTS

---

[1] He is charged with possession with intent to distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  (D.I. 1)  More than 250 grams of crack cocaine were found in the front seat of defendant's car at the time of his arrest.  (D.I. 18)

[2] Detective Danny Wright and Lieutenant Patrick Ogden testified at the evidentiary haring.  (D.I. 24)

Pursuant to Federal Rule of Criminal Procedure 12(e), the following constitutes the court's essential findings of fact.

1.  On December 30, 2003, Delaware State Police ("DSP") Detective Wright, an eighteen-year veteran DSP officer assigned to the Special Investigation Unit ("SPI") for Kent and Sussex Counties, arrested an individual for a drug offense. (D.I. 24 at 4) This individual agreed to cooperate as a confidential informant ("CI") for Wright. This was the first time that the CI provided assistance to law enforcement. (Id. at 25)

2.  The CI identified defendant Jackie Johnson as the source of his drugs and indicated that defendant was also known as "Jay." (Id. at 4) The CI said that defendant lived in Wilmington and that they had known each other for 10 years. For the past several years, defendant had supplied the CI with large quantities of crack and powder cocaine for "distribution." (Id. at 4)

3.  To determine the veracity of the CI's information, Wright conducted a criminal history check on defendant. (Id. at 4-5) This search produced a photograph of defendant, which the CI positively identified as a photograph of his drug supplier. (Id. at 26)

4.  Wright asked the CI to participate in a controlled purchase of cocaine from defendant. Although the CI agreed to make the purchase, he told Wright that he owed defendant $20,000

for half a kilogram of cocaine that defendant had previously "fronted" him.[3]

5. Wright instructed the CI call and inform defendant that he had the money to pay off the debt and that he needed more cocaine to sell to customers. (Id. at 6)

6. Around 5:00 p.m. on December 30, 2005, in the presence of Wright and DSP Lieutenant Vongoris, the CI called one of defendant's cell phone numbers. (Id. at 6) Although Wright was not on the phone with the CI and defendant, he could hear both sides of the conversation because they were talking loudly. (Id. at 7) The CI greeted the caller as Jay. (Id. at 8) The CI told defendant that he had the money for the "stuff" and that he needed "more." (Id.) Defendant told the CI that he would take care of him and to come to Wilmington for a meeting. Defendant also told the CI to call again when he was closer to Wilmington.

7. Following the call, Wright and Vongoris contacted the DSP Special Operations Response Team about participating in the investigation. (Id. at 9) Briefing and planning of the surveillance for the investigation occurred at Troop 2 in New Castle County.

---

[3]Relying on his 18 years of experience with the DSP, Wright explained that "fronted" meant the CI obtained the cocaine from defendant without paying for it, with the agreement that the CI would pay defendant at some later date. (Id. at 6)

3

8.     While at Troop 2, Wright met Detective Clemmons, a member of the DSP Drug Unit for the northern part of Delaware.[4] Clemmons advised that defendant was a "known drug dealer in New Castle County and provided additional information, [that] substantiated some of the information that the CI [stated] about the quantity of cocaine that was being distributed." (Id. at 10)

9.     Later that night, the CI made two more calls to defendant; however, because defendant became unavailable, the meeting never occurred and the surveillance was terminated. (Id. at 11-12)

10.    The investigation resumed the next moring at 10:00 a.m. The CI called defendant on his cell phone, with Wright listening to both sides of the conversation. (Id. at 12) Defendant told the CI to come up to Wilmington to meet and to call again when he was closer. (Id. at 13)

11.    Because the DSP needed time to assemble and to formulate a plan, Wright had the CI call back and advise that he would be slightly delayed because someone had his vehicle. (Id.)

12.    Subsequently, Wright had the CI call defendant to indicate that he was in the Wilmington area. (Id. at 14) Defendant told the CI that he would call him after he visited his

---

[4]This meeting was not memorialized by Wright in his police report.

4

mother at the hospital and to wait until that happened. (Id. at 14)

13.  After two hours passed, Wright had the CI call defendant again. (Id.) Defendant said he was not ready to meet and that he would call the CI back. (Id. at 14-15)

14.  At about 2:00 p.m., Wright instructed the CI to again call defendant. (Id. at 15) This time, defendant told the CI to meet him at University Plaza ("Plaza"). The Plaza is a strip mall where the CI had previously picked up cocaine from defendant. (Id. at 16-17)

15.  Wright notified DSP and SPI members of the location of the deal; they were dispatched in unmarked vehicles to establish surveillance at various locations outside the Plaza. (Id. at 17, 36-39) Radio communication was established among the units and Wright. (Id. at 39)

16.  Wright and the CI went to the Plaza in an unmarked vehicle. (Id. at 17)

17.  Several more phone calls between the CI and defendant occurred. (Id. at 17-18) In each, defendant said he was on his way, but would not provide a specific arrival time. (Id. at 19) Although not on the telephone during these calls, Wright was able to overhear the conversations between the CI and defendant. (Id. at 18)

18. After about 45 minutes from the last call, defendant called the CI and announced that he had arrived at the Plaza. (Id. at 18-19)

19. Shortly thereafter, Wright's vehicle passed alongside of defendant's car. (Id. at 19-21) Wright was able to positively identify defendant from an arrest photo. Wright radioed defendant's description and license plate number to the surveillance units.

20. For the next 15 minutes, defendant drove through the Plaza parking lot without stopping or parking and without an apparent direction. (Id. at 40, 52-54)

21. Wright concluded that defendant's driving was indicative of someone involved in illegal activity. (Id. at 23) As a result, officers were instructed to arrest defendant. (Id. at 41) After defendant's vehicle stopped in parking lot traffic, officers surrounded his car and placed him under arrest. (Id. at 43-44) An officer standing alongside the vehicle observed a clear plastic bag on the front seat. (Id. at 44-46) Recovered from the bag was approximately a quarter kilo of crack cocaine.

### III. DISCUSSION

1. Defendant asserts that the stop of his vehicle was not based on probable cause because the CI was not a past proven reliable informant. (D.I. 28) Further, he argues that the

circumstances surrounding the arrest failed to corroborate the CI's information.

2.   Conversely, plaintiff contends that the CI's information was corroborated by:  (1) the arrest photo of defendant; (2) the phone conversations; (3) the DSP officer who knew about defendant's drug dealings in New Castle County; and (4) defendant's behavior at the Plaza.  (D.I. 25)

**IV. STANDARD OF REVIEW**

1.   "Law enforcement authorities do not need a warrant to arrest an individual in a public place as long as they have probable cause to believe that person has committed a felony." United States v. Burton, 288 F.3d 91, 98 (3d Cir. 2002)(quoting United States v. McGlory, 968 F.2d 309, 342 (3d Cir. 1992)). Probable cause is a "fluid concept - turning on the assessment of probabilities in particular factual contexts - not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213, 232 (1983).  Whether law enforcement had probable cause for a warrantless arrest is assessed by the totality of the circumstances."  Id. at 230-232.

2.   A CI's tip can form the basis for probable cause to arrest.  Id. at 241-42.  Corroboration of the details of the tip is an essential step to determining the veracity of the information as well as the CI.  Id.

7

3.  Considering the totality of the circumstances, the court finds that defendant's arrest was supported by probable cause because a reasonable officer would have believed that defendant was delivering drugs to the CI. In so doing, the court notes that Wright engaged in steps to ensure the veracity of the CI. First, he checked criminal records and found an arrest photo that the CI positively identified as defendant. Second, the series of phone conversations demonstrated a history between defendant and the CI that involved the sale and distribution of narcotics. Third, Wright spoke with a DSP detective familiar with drugs dealings in northern Delaware. The detective conclusively buttressed the CI's description of defendant as a dealer involved in the distribution of large quantities of cocaine. Although this information was not included in any reports prepared by Wright, this does not erode the credibility of Wright's testimony. To the contrary, the court credits Wright's uncontradicted testimony as credible. Finally, the events at the Plaza suggest that defendant was there to consummate another drug deal with the CI and to collect his money for the previous transaction.

## V. CONCLUSION

For the reasons stated, IT IS ORDERED this 19th day of October, 2005, that:

1.  Defendant's motion to suppress (D.I. 9) is denied.

8

2. The court will initiate and conduct a telephonic status conference on **Thursday, November 3, 2005** at **4:00 p.m.**

3. The time between this order and the teleconference shall be excluded under the Speedy Trial Act in the interests of justice. 18 U.S.C. § 3161(h)(8)(A).

_____
United States District Judge