IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JACKIE JOHNSON,                     )
                                    )
        Movant/Defendant,           )
                                    )
                                    )
        v.                          )    Crim. No. 04-103-SLR
                                    )    Civ. No. 08-858 -SLR
                                    )
UNITED STATES of AMERICA,           )
                                    )
        Respondent/Plaintiff.       )


**MEMORANDUM OPINION**

_____

Jackie Johnson.  Pro se movant.

Christopher J. Burke,  Assistant United States Attorney, United States Department of
Justice, Wilmington, Delaware.  Counsel for respondent.

_____

January 7 , 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Jackie Johnson ("movant") is a federal inmate currently confined at F.C.I. Oakdale, Louisiana.   Movant timely filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.I. 103), and then filed an amended § 2255 motion on February 24, 2010 by permission of the court.  (D.I. 121)  Respondent filed an answer in opposition.  (D.I. 123)  Movant then filed another amended § 2255 motion in August 2010. (D.I. 125; D.I. 129)  For the reasons discussed, the court will deny movant's amended § 2255 motions filed in February and August 2010 without holding an evidentiary hearing.

## II. BACKGROUND

On December 30, 2003, Delaware State Police ("DSP") Detective Dan Wright arrested an individual on cocaine trafficking charges in Sussex County, Delaware.  (D.I. 62, at pp. 82-104)   During the course of the interview, the individual stated that movant had supplied him/her with cocaine in the past; that movant was a multi-kilogram cocaine dealer; and that he/she had known movant for more than 10 years.  Although the individual identified movant by name, he/she stated that movant went by the nickname "Jay."  The individual agreed to become a confidential informant ("CI") for the DSP in a subsequent drug investigation of movant by contacting movant for drugs.  (*Id.*)

On December 30, 2003, the CI used a cell phone to contact movant and arrange a drug transaction.  The CI and movant agreed that movant would deliver drugs to the CI on December 31, 2003 at the University Plaza Mall in Newark, Delaware.  (*Id.*)  Prior to making this first cellular phone call to movant, the CI informed Detective Wright that

302-562-5765 was one of movant's cellular phone numbers. Detective Wright included this statement in his subsequent police report. (*Id.*)

On December 31, 2003, a 20-person team of DSP officers assembled in the parking lot of the University Plaza Mall. During this period of time, Detective Wright, another detective, and the CI sat in an undercover police vehicle in the same parking lot. The CI and movant continued to converse via numerous cell phone calls in an effort to finalize the delivery. Finally, after the CI received a phone call from movant in the early evening, Detective Wright was able to identify movant as the driver of a gold Chrysler Concorde that had just entered the parking lot by referring to a photograph of movant in his possession. Detective Wright immediately notified other members of the DSP team so as to effect movant's arrest. (*Id.*) DSP officers then observed movant continuously drive around for approximately 20 minutes without stopping – through the parking lot of the mall, out onto a nearby highway, and then back into the parking lot. Movant and the CI were communicating via cell phone while movant was driving around because they were attempting to determine each other's location and to identify a location for the drug delivery. (*Id.* at 132-152) In total, the CI made between eight to ten cellular phone calls to movant on December 30 and 31, 2003. Detective Wright listened to both sides of most of those conversations, and he was able to identify movant's voice as the voice on the other end of those phone calls after listening to movant speak upon his arrest. (*Id.*)

Eventually, when movant's car slowed in traffic in the mall parking lot, DSP officers blocked the front and back of movant's car with their police cars. The officers in the front vehicle put on their emergency lights, at which point movant attempted to flee

2

by putting his car in reverse and crashing into a civilian vehicle.  The officers took movant into custody and, while doing so, noticed a bag of crack cocaine located under the armrest of the car, between the front passenger and driver seats.  Approximately one-third of the bag of crack cocaine was sticking out of the armrest and onto the passenger's seat.  (*Id.*)

On September 28, 2004, movant was indicted on one count of possession with intent to distribute more than 50 grams of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A). (D.I. 1)  A two-day jury trial was held in February 2006 and, after deliberating for approximately 30 minutes, the jury convicted movant as charged.  Movant filed a post trial "motion for a judgment of acquittal and new trial pursuant to Fed. R. Crim. P. 29 & 33", which the court denied on June 14, 2006.  (D.I. 58; D.I. 67; D.I. 68)  On January 30, 2007, the court sentenced movant to 240 months of imprisonment and a 10-year term of supervised release, and ordered movant to pay a $100 special assessment. (D.I. 92)

Movant filed a notice of appeal.  The Third Circuit Court of Appeals affirmed movant's conviction on October 2, 2008.  (D.I. 93; D.I. 102)

Movant timely filed a § 2255 motion, and then he filed an amended § 2255 motion with the court's permission.  (D.I. 103; D.I. 121)  The government filed an answer asking the court to deny the motion in its entirety.  (D.I. 123)  Thereafter, in August 2010, movant filed a second amended § 2255 motion adding a new argument that he should receive a new sentencing hearing under the Fair Sentencing Act of 2010.  (D.I. 129)

## III. DISCUSSION

Movant's first amended § 2255 motion asserts three claims: (1) the government violated his due process rights by failing to disclose *Brady* material; (2) trial counsel provided ineffective assistance; and (3) appellate counsel provided ineffective assistance.[1] The court will address these claims in seriatim.

### A. Claim One: *Brady* Violations

In claim one, movant contends that the government violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose Cingular Wireless' response to its subpoena for records concerning the cell phone number listed in the police report (302-562-5765), and by failing to disclose "successive lab reports" produced by the government's expert witness, forensic chemist Jack Fasanello. Movant did not present his two *Brady* claims to the Third Circuit on direct appeal. Consequently, the claims are procedurally defaulted,[2] and the court cannot review the merits of the claims absent a showing of cause for the procedural default and prejudice resulting therefrom, or actual innocence. *Bousley v. United States*, 523 U.S. 614, 621-22 (1998).

A violation of *Brady* occurs when the government fails to disclose evidence materially favorable to the accused, including both impeachment evidence and exculpatory evidence. *United States v. Bagley*, 473 U.S. 667, 676 (1985). There are three components of a *Brady* violation: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or it had impeachment value: (2) the

---

[1]For ease of analysis, the court has renumbered movant's claims without changing the arguments contained therein.

[2]*See United States v. Frady*, 456 U.S. 152, 165 (1982).

4

prosecution suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Lambert v. Blackwell*, 387 F.3d 210, 252 (3d Cir. 2004) (citing *Banks v. Dretke*, 540 U.S. 668 (2004)). A movant demonstrates materiality of the suppressed evidence by showing a "reasonable probability of a different result." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). In turn, "a reasonable probability of a different result is accordingly shown when the government's evidentiary suppression undermines confidence in the outcome of the trial." *Id.*

When, as here, the court is presented with procedurally defaulted *Brady* claims, a movant demonstrates prejudice by satisfying the third component of the *Brady* standard, namely, by showing that the evidence was material for *Brady* purposes. *Banks v. Dretke*, 540 U.S. 668, 691 (2004). For the reasons set forth below, the court concludes that movant has failed to establish either cause or prejudice for his procedurally defaulted *Brady* claims.

### 1. Cingular Wireless' response to subpoena

According to Detective Wright's report regarding movant's December 2003 arrest, the CI used a cellular telephone to make between eight to ten phone calls to movant in order to arrange a drug transaction. The report explains how, at the time of the CI's first call to movant, the CI stated that 302-562-5765 was one of movant's cellular phone numbers. Detective Wright's report does not indicate what phone number the CI dialed in making the eight to ten phone calls prior to movant's arrest in December 2003, nor does it indicate the phone number assigned to the CI's cell phone.

When the police arrested movant on December 31, 2003, they found one cell phone on his person, a Nextel i730 telephone, which they retained as evidence. Movant was released on bail, but he was arrested again in January 2004 for violating his federal supervised release, at which time the police recovered a Motorola phone from his person. Subsequent examination by police revealed that the phone number for the Nextel i730 cell phone was 302-275-4233, and that the number for the Motorola cell phone 302-367-0094.

On February 8, 2006, prior to trial, the government sent a subpoena to Cingular Wireless requesting any phone records for phone number 302-562-5765 (the phone number listed in Detective Wright's report) covering December 30 and 31, 2003. Cingular Wireless responded on or about February 10, 2006 that this phone number was not assigned to a Cingular Wireless customer during the time period at issue.

On February 17, 2006, nearly a week before trial, the government sent trial counsel a letter informing him of the phone numbers for movant's Nextel and Motorola cell phones, and stated that neither the government nor the DSP had any phone in its possession with the cell phone number referenced in Detective Wright's police report. The government also provided trial counsel with five pages of cellular phone records it had obtained, but indicated that the government would not be offering any cellular telephone records into evidence at trial.

During his opening argument, trial counsel told the jury that the government would not be presenting cell phone records connecting any cell phone belonging to movant to a cell phone that might have been used by an informant or other law enforcement officer. The government did not offer any cellular telephones or cellular

6

telephone records during the trial, nor did any government witness mention a cellular telephone number associated with the CI or with movant. In fact, during trial counsel's cross-examination, Detective Wright explained that DSP officers did not retain the cellular telephone used by the CI, and that they did not take note of the CI's cell phone number or the telephone number dialed by the CI. Detective Wright also explained that he gave the cell phone back to the CI's family.

During his closing argument, trial counsel argued that the jury should acquit movant, in part because Detective Wright did not retain the CI's cell phone after movant's arrest and because the government did not present any evidence concerning the phone number dialed by the CI during those eight to ten phone calls that allegedly took place with movant. Trial counsel emphasized that the government did not introduce as evidence the cell phone movant supposedly used to converse with the CI on the day of his arrest, and that the government had not in any way connected movant's cell phone with the cell phone used by the CI.

Now, in this proceeding, movant contends that the government's failure to turn over Cingular Wireless' response to its subpoena constituted a *Brady* violation and vitiated trial counsel's performance at the suppression hearing and trial. According to movant, the government did not provide him with Cingular Wireless' response to the subpoena until December 21, 2007, "well after" his appellate brief had been completed.[3]  (D.I. 121, at p. 28)

---

[3]The Third Circuit entered its mandate affirming movant's conviction on September 10, 2008.

7

Movant attempts to establish two "causes" for his procedural default. First, he contends that the government's late disclosure prevented him from raising the issue on appeal because he did not become aware of Cingular Wireless' response until December 21, 2007, well after his appellate briefing was completed. (D.I. 121, at note 4) This argument is unavailing, because movant's appeal was not submitted on the briefs to a three-judge panel of the Third Circuit Court of Appeals until March 27, 2008, approximately four months after he became aware of Cingular Wireless' response. See generally United States v. Johnson, Civ. A. No. 07-1423 (3d Cir.). Consequently, movant could have filed a motion for permission to amend his appellate brief to include this newly discovered claim.[4]

In his second attempt to establish cause, movant alleges ineffective assistance of appellate counsel. However, only ineffective assistance rising to the level of a Sixth Amendment violation can constitute cause for a procedural default and,[5] as explained later in the text of this opinion, appellate counsel's "failure" to raise on direct appeal the issue of Cingular Wireless' response to the government's subpoena did not rise to the level of constitutionally ineffective assistance of counsel. Therefore, the court concludes that movant has failed to demonstrate cause for not presenting this first Brady claim on direct appeal.

---

[4]In fact, two letters from appellate counsel to movant, dated February 7, 2008 and March 20, 2008, suggest that appellate counsel considered this Brady claim, but decided against raising the issue on direct appeal. (D.I. 123-2, at pp. 10-11) In the letters, appellate counsel advised movant to raise the issue as an ineffective assistance of counsel claim in a § 2255 motion after the Third Circuit decided his direct appeal. (D.I. 123-2, at pp. 10-11)

[5]McClesky v. Zant, 499 U.S. 467, 494 (1991).

8

The court also concludes that movant has not demonstrated the requisite prejudice stemming from his default because he has not established the materiality of Cingular Wireless' response. Significantly, Cingular Wireless' response simply states that the company was not the cellular telephone provider for phone number 302-562-5765 on the day prior to the arrest and on the day of the arrest;  the response does not eliminate the possibility that some other cellular company was providing cellular telephone service for that telephone number on the dates in question.  Given that nothing in the record actually connects movant to the phone number 302-562-5765 listed in the police report, the fact that Cingular Wireless was not providing service for 302-562-5765 on the day of movant's arrest does not demonstrate that movant was not the person conversing with the CI on that day.

Moreover, even without having received Cingular Wireless' response to the subpoena either prior to or during the trial, trial counsel consistently argued that the government had not produced any evidence linking any of movant's cell phones with the CI or his cell phone.  Nevertheless, the jury convicted movant after only 30 minutes of deliberation, deciding that the other significant evidence established movant's guilt of possession of cocaine with intent to distribute beyond a reasonable doubt.

In short, movant has failed to demonstrate that prejudice ensued from the government's failure to provide Cingular Wireless' response.  Accordingly, the court will deny movant's first *Brady* argument as procedurally defaulted.

### 2. Fasanello's December 2005 lab report

Detective Vincent Clemons, the first person to test the drugs obtained during movant's arrest in December 2003, determined that the drugs and packaging

9

(hereinafter referred to as "drugs") weighed 272.3 grams.  Jack Fasanello, an expert

witness for the government who was a senior forensic chemist at the DEA's Northeast

Laboratory, tested the drugs on two subsequent occasions:  April 2004 and December

2005.  Fasanello's April 2004 lab report listed the drug weight as 260.1 grams, and his

December 2005 report listed the drug weight as 242.1 grams.

On the first day of movant's trial, Fasanello testified as to his nearly 37 years of

expertise in forensic chemistry.  He described how he opened the sealed package of

drugs on April 1, 2004, tested and analyzed the drugs, and then re-sealed and stored

the drugs in the laboratory's vault.  He testified how, on December 8, 2005, after the

defense requested their own expert to test a portion of the drugs, he checked the same

envelope out of the storage facility, re-analyzed the drugs, and re-sealed the envelope.

Fasanello then testified that the drugs in question were crack cocaine, and that the

drugs weighed 260.1 grams when he tested them on April 1, 2004.

Defense counsel cross-examined Fasanello, and the court then excused him.

However, based on defense counsel's line of questioning for another witness, it

became clear to the government that defense counsel planned to argue that the 12

gram difference between the weight of the drugs in December 2003 and April 2004

suggested that the drugs were not the same.  The government asked to re-call

Fasanello to the stand to address the issue of the drug weight loss.  On the morning of

his recall testimony, Fasanello provided the government with his December 2005 lab

report and, in turn, the government provided the report to defense counsel; defense

counsel had not been aware of the December 2005 lab report prior to this date.  The

government explained to the court that it would not seek to introduce the December

10

2005 report, nor would it ask Fasanello any questions about the additional drug weight between April 2004 to December 2005.

Fasanello was recalled to the stand, and he testified that the weight of cocaine base, particularly cocaine base that is moist, tends to decrease over time due to evaporation, "even when they are contained in hermetically-sealed plastic bags." (D.I. 123, at p. 8) As it had represented to the court, the government never questioned Fasanello about the December 2005 report.

During his closing argument, trial counsel argued at length that the 12-gram difference in the weight of the drugs from December 2003 to April 2004 meant that the drugs introduced by the government at trial were not the same drugs recovered on the date of movant's arrest.

In this proceeding, movant contends that the government violated *Brady* by failing to timely disclose Fasanello's December 2005 lab report.[6] Movant appears to allege ineffective assistance of appellate counsel as cause for his failure to present this issue on direct appeal. (D.I. 125, at pp. 4-5) In turn, he attempts to establish prejudice by asserting that the "non-disclosure of the [December 2005] lab reports[] also limited [trial counsel's] investigative efforts in that the information he would have been able to provide to an expert witness was incomplete." (D.I. 121, at p. 29)

Turning first to movant's allegation of prejudice, the court concludes that movant has failed to demonstrate the materiality of the December 2005 lab report. Even if counsel had been given the opportunity to provide the report to an "expert witness"

---

[6]The court concurs with the government's assessment that movant's reference to "successive lab reports" actually means Fasanellos' December 2005 lab report.

11

during his "investigative efforts," movant has not indicated that an expert would have testified that the additional 18-gram decrease in weight was attributable to something other than evaporation. Moreover, considering that the additional 18-gram decrease in weight demonstrated by the December 2005 report supports Fasanello's testimony that crack cocaine evaporates over time, it is highly unlikely that trial counsel would have attempted to introduce the lab report as evidence. Simply stated, movant cannot demonstrate that he was prejudiced at trial through the failure to have earlier access to a report that actually supported the trial testimony provided by the government's expert witness.

Having determined that movant has failed to demonstrate prejudice resulting from his default of the instant claim, the court need not address the issue of cause. See Frady, 456 U.S. at 168 (where the Supreme Court found "it unnecessary to determine if Frady [showed] cause, because [the Court was] confident he suffered no actual prejudice" resulting from the errors about which he complained). Accordingly, the court will deny movant's second Brady claim as procedurally defaulted.

## B. Claim Two: Ineffective Assistance of Trial Counsel

In claim two, movant asserts three specific complaints about trial counsel's performance: (1) counsel failed to secure an expert witness to support the defense's contention that the crack cocaine evidence presented by the government at trial was not the same drug evidence seized from his car by law enforcement officers at the scene of his arrest; (2) counsel failed to request a particular jury instruction; and (3) counsel failed to properly investigate and obtain the cell phone records that were pivotal to the government's case in chief. Movant has properly raised these ineffective

12

assistance of counsel arguments in the instant § 2255 motion rather than on direct appeal,[7] and the court must review the arguments pursuant to the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984).

Under the first *Strickland* prong, movant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, movant must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. Additionally, in order to sustain an ineffective assistance of counsel claim, movant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689. The court will address movant's three ineffective assistance of trial counsel arguments in seriatim.

### 1. Expert witness

Movant contends that trial counsel should have called an expert witness to support the defense theory that the drug evidence introduced at trial was not the drug evidence seized from his vehicle. To support his contention that counsel's failure to secure an expert witness regarding the drug evidence constituted ineffective

[7]*See United States v. Garth*, 188 F.3d 99, 107 n.11 (3d Cir. 1999); *United States v. Cocivera*, 104 F.3d 566, 570 (3d Cir. 1996).

assistance, movant references a post-trial e-mail between defense counsel and a Dr. John Morgan, in which Dr. Morgan allegedly "informed [defense counsel] of an associate who provided an opinion in contrast with the testimony given by" Fasanello that the weight difference was due to evaporation.

The court is not persuaded. First, contrary to movant's assertion, the e-mail from Dr. Morgan to defense counsel does not contradict Fasanello's testimony, but actually supports it. For instance, Fasanello testified how, due to evaporation, drugs can lose "substantial quantities of [] moisture" as time passes, even when they are contained in hermetically-sealed plastic bags, and said that he had seen this occur repeatedly. In turn, Dr. Morgan's e-mail states that references to "hermetically sealed" plastic bags often refer to bags that are "not necessarily water vapor impermeable," and explains that, if this were the case, the amount of evaporation of the crack cocaine evidence that occurred between December 2003 and March 2004 - "only 5.5%" of the weight - would be "reasonable for a 4 month period." (D.I. 121, at p. 37)

Additionally, movant has not provided evidence that any expert would have provided helpful testimony on this issue at trial, or that any expert witness would have or could have contradicted Fasanello's explanation that the drug evidence could have decreased in weight over time due to evaporation, although stored in a hermetically sealed bag. Moreover, given the government's detailed evidence regarding the unbroken chain of custody for the drug evidence, testimony about the theoretical possibility of evidence substitution or tampering would not have sufficiently undermined the government's proof that the drug evidence introduced at trial was, indeed, the same drug evidence that was seized from movant on the day of his arrest. For these

14

reasons, the court concludes that movant has failed to demonstrate a reasonable

probability that the result of his trial would have been different but for trial counsel's

"failure" to call an expert to rebut Fasanello's testimony.  Accordingly, the court will deny

this first ineffective assistance of counsel allegation as meritless.

### 2. Jury Instruction

The court instructed the jury as follows:

> For each crime charged, the government must prove every element of that crime charged beyond a reasonable doubt.  Proof beyond a reasonable doubt does not mean proof beyond all possible doubt.  Possible doubts or doubts based purely on speculation are not reasonable doubts.  A reasonable doubt is a doubt based purely on reason and common sense.  It may arise from the evidence, the lack of evidence, or the nature of the evidence.

> Proof beyond a reasonable doubt means proof which is so convincing that you would not hesitate to rely and act on it in making the most important decisions in your own lives.  If you are convinced that the government has proved the defendant guilty beyond a reasonable doubt, say so by returning a guilty verdict as to that count.  If you are not convinced, say so by returning a not guilty verdict as to that count.

> *     *     *     *

> The indictment charges the defendant with possession with intent to distribute more than 50 grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A).  For you to find the defendant guilty of this charge, the government must prove the following four elements beyond a reasonable doubt:  First, that the defendant possessed a controlled substance; Second, that the defendant knew that he possessed some type of controlled substance; Third, that the defendant intended to distribute that substance; and Four, that the substance weighed more than 50 grams and contained a detectable amount of cocaine base.

(D.I. 53, at pp. 3, 16) Movant contends that trial counsel provided ineffective assistance

by failing to ask the court to explicitly instruct the jury that it "must acquit [movant] if the

government did not prove beyond a reasonable doubt that the alleged controlled

15

substance introduced as an exhibit at trial was the same item seized from [movant's car on the date of the arrest]." (D.I. 121, at p. 24)

Movant's argument, however, is unavailing, because the particular jury instruction movant contends counsel should have requested was superfluous and unnecessary. The jury instruction provided by this court clearly informed the jury that it needed to find each element beyond a reasonable doubt, including that movant actually possessed more than 50 grams of a substance containing cocaine base; implicit in this instruction was the understanding that movant could not be guilty of possession unless the controlled substance seized from him on the date of his arrest was the same controlled substance analyzed and weighed by the government's witnesses, and testified about in court.

In addition, the government's clear contention, emphasized during the trial and during the closing argument, was that the drug evidence introduced at trial was the same substance that had been recovered from movant's car at the time of his arrest. And, during the closing, trial counsel argued that the controlled substance introduced at trial was not the same controlled substance seized from movant's car. Given this record and the fact that the jury did not hear any testimony regarding the weight or drug identity of any other controlled substance, if the jury had agreed with defense counsel's contention that the evidence introduced at trial was not the same evidence seized from movant's car, then the government would not have met its burden of proof as set forth by the court's instruction.

It is well-settled that defense counsel does not perform deficiently by failing to raise a meritless issue or argument. *See United States v. Sanders*, 165 F.3d 248, 253

16

(3d Cir. 1999). Having determined that movant's suggested jury instruction was superfluous, the court concludes that trial counsel did not render ineffective assistance by failing to request an unnecessary jury instruction. Accordingly, the court will deny the instant allegation of ineffective assistance of counsel as meritless.

### 3. Cellular telephone records

According to Detective Wright's police report, movant had eight to ten conversations with the CI via his cellular telephone. However, the defense theory presented during the trial was that movant was not the person who had been negotiating a drug transaction with the CI over the cell phone, because there was no direct link between the CI's cell phone and any cell phone in the movant's possession.

In this proceeding, movant contends that trial counsel performed ineffectively by failing to properly investigate and obtain the phone records that were pivotal to the government's case-in-chief. Movant asserts that he was not in possession of a cell phone with the phone number referenced in the police report at the time of his arrest, and that trial counsel would have been able to present this "fact" to support the defense theory presented at trial had counsel done "further investigation" into the government's phone records.

The court is not persuaded. To begin, trial counsel did not need to investigate the phone records further because he already knew that the phone number referenced in the police report was not associated with either of the two cell phones found in movant's possession. Moreover, during his opening and closing statements, defense counsel repeatedly emphasized to the jury that the government did not provide any evidence regarding the cell phone numbers used by the CI to contact movant, nor did

17

the government produce any evidence that a cell phone had even been recovered from movant. Given these circumstances, trial counsel cannot be said to have performed objectively unreasonably by "failing" to obtain phone records about, or by failing to conduct an additional investigation into, a fact he already knew.

Movant also cannot demonstrate that he was prejudiced by counsel's performance, because the evidence produced at trial was more than sufficient to demonstrate that movant arranged the drug transaction with the CI by phone, and that movant actually possessed the crack cocaine for which he was charged. First, Detective Wright clearly identified the voice on the other end of the telephone calls with the CI as that of movant. Second, movant brought the drugs in question with him to the University Plaza Mall, which was the same location where the drug transaction arranged by the CI was scheduled to take place. Third, while movant was driving in and around the mall, officers saw movant holding a cellular phone and speaking into it during the times that that the CI was arranging the delivery via his cell phone. Fourth, movant drove evasively while in the mall parking lot, suggesting that he knew he had contraband with him and that he did not want to be caught. Fifth, when confronted by police officers, movant put his car in reverse and crashed into another vehicle, suggesting knowledge of guilt. And finally, movant did, in fact, have crack cocaine in his car. The crack cocaine was found in plain view, sticking out of an armrest next to the driver's seat.

In short, given this overwhelming evidence of his guilt, movant cannot demonstrate a reasonable probability that any additional efforts on counsel's part to

18

obtain more information about cellular telephones would have affected the jury's verdict. Thus, movant has failed to satisfy the prejudice prong of *Strickland*.

### C. Claim Three: Ineffective Assistance of Appellate Counsel

In his final claim, movant contends that appellate counsel "failed to present the numerous constitutional issues which were preserved in the District Court for review to the Appellate Court." (D.I. 121, at p. 26) He also succinctly asserts that "[a]n adequate investigation and review of the record pertaining to the late disclosure of the cell-phone records alone would have warranted remand to the District Court for consideration." *Id.*

As an initial matter, the court agrees with the government's contention that movant's vague and conclusory argument regarding appellate counsel's failure to present "numerous constitutional issues" fails to allege sufficient facts to warrant further analysis. *See United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000). By not describing the "numerous constitutional issues" appellate counsel should have raised on appeal, movant has failed to present the court with a basis for determining if appellate counsel provided ineffective assistance.

Furthermore, to the extent movant has raised one specific argument, namely, that appellate counsel was ineffective for failing to raise the issue of the government's late disclosure of the cell-phone records on direct appeal (D.I. 125, at p. 3), the court is not persuaded. As demonstrated by the court's prior discussion of movant's *Brady* claims, movant has failed to demonstrate that he was prejudiced by government's late disclosure of Cingular Wireless' response to the government's subpoena. By failing to demonstrate prejudice, movant has failed to establish the materiality of this evidence which, in turn, precludes him from establishing a viable *Brady* claim. See Banks, 540

19

U.S. at 691 (stating that if a petitioner succeeds in establishing cause and prejudice for a procedurally defaulted *Brady* claim, he will at the same time succeed in establishing the elements of his *Brady* claim). Therefore, appellate counsel did not render ineffective assistance by failing to raise on direct appeal the instant meritless *Brady* argument.

## IV.   AMENDED MOTION FILED AUGUST 2010

In August 2010, movant filed a second amended § 2255 motion, asserting that he is entitled to a new sentencing hearing under the Fair Sentencing Act of 2010. The court is not persuaded and, therefore, will deny the new claim as meritless. The Fair Sentencing Act of 2010, which was signed into law more than three years after movant was sentenced, does not apply retroactively.[8] *See, e.g., United States v. Patillo*, 2010 WL 5018228 (3d Cir. Dec. 9, 2010)(non-precedential). Thus, movant cannot benefit from the newly enacted law.

## V.   EVIDENTIARY HEARING

Section 2255 requires a district court to hold an evidentiary hearing on a § 2255 motion unless the "motion and the files and records of the case conclusively show" that the movant is not entitled to relief. 28 U.S.C. § 2255; *see also United States v. Booth*, 432 F.3d 542, 545-46 (3d Cir. 2005); *United States v. McCoy*, 410 F.3d 124, 131 (3d

---

[8]Pursuant to the federal general savings statute, courts must apply the penalties in place at the time the crime was committed, unless the new law at issue expressly provides for retroactive application. *See* 1 U.S.C. § 109. The Fair Sentencing Act of 2010 raises the threshold quantity of crack cocaine necessary to invoke to the statutory minimum prison sentence of 60 months from 50 grams of crack cocaine to 280 grams. However, the Act was signed into law on August 3, 2010, years after movant's initial arrest, conviction, and sentencing, and nothing in the Act itself indicates that it is to be applied retroactively.

Cir. 2005); Rule 8(a), 28 U.S.C. foll. § 2255.  As previously explained, the record conclusively demonstrates that movant is not entitled to relief because his arguments are without merit.  Therefore, the court will deny movant's § 2255 motion(s) without an evidentiary hearing.

## VI.    CONCLUSION

For the reasons stated, the court will dismiss movant's 28 U.S.C. § 2255 motion(s) to vacate, set aside, or correct sentence without an evidentiary hearing. Additionally, the court will not issue a certificate of appealability because movant's § 2255 motion fails to assert a constitutional claim that can be redressed, and reasonable jurists would not find this assessment debatable.  *See* 28 U.S.C. § 2253(c)(2)(A certificate of appealability is appropriate only if the petitioner "has made a substantial showing of the denial of a constitutional right.");  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); Fed. R. App. P. 22; 3d Cir. L.A.R. 22.2 (2008).  The court shall issue an appropriate order.